**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD RIVENBURGH,**

                              **Plaintiff,**

           **v.**                                          **1:03-CV-1168**
                                                              **(GLS)**

**CSX CORPORATION,**

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**

KLEEMAN, ABLOESER LAW FIRM       SAMUEL ABLOESER, ESQ.
The Sterling Commerce Center - #350
1819 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103

**FOR THE DEFENDANT:**

HODGSON, RUSS LAW FIRM           NOREEN D. GRIMMICK, ESQ.
677 Broadway, Suite 301
Albany, New York 12207-2884

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

   Richard Rivenburgh sued his railroad employer, CSX Corporation

(CSX), pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §

51 *et. seq.*, claiming that he sustained hearing loss in an accident caused

by CSX's failure to provide him with a safe working environment.  After a

jury returned a verdict in Rivenburgh's favor, CSX moved for judgment

notwithstanding the verdict or, alternatively, a new trial, *see Dkt. No. 102;*

see *also* FED. R. CIV. P. 50 & 59, and Rivenburgh opposed.  *See Dkt. Nos.*

*105, 106.*  For the following reasons, CSX's motions are denied.

## II. Background

After Rivenburgh completed his direct case, CSX moved for judgment

as a matter of law.  *See Dkt. No. 88* (*Minute Entry*).  CSX supplemented its

motion at the conclusion of the case, and the court reserved.  Thereafter,

the jury found CSX negligent, and Rivenburgh 40% at fault, comparatively.

*See id.*  Rivenburgh was awarded $600,000.00 in past pain and suffering

and $400,000.00 in future pain and suffering.[1]  *See id.*  CSX then moved to

set aside the verdict, and the court reserved decision pending the parties'

additional submissions.  *See id.*

_____

[1]As to future pain and suffering, the parties stipulated to a life expectancy of 21.7 years and a two percent discount rate.

2

### III.  <u>Facts</u>[2]

On October 12, 2000, Rivenburgh had been employed as a car inspector at CSX's Selkirk, New York Yard for approximately fifteen years. *See* (Tr. at 58), *Dkt. No. 100*.  On that day, he was repairing boxcars in the Departure Yard Building.  *See id.*  He was not wearing hearing protection. *See* (Tr. at 70).  He was assigned to perform various repairs, perform a brake test on an outbound train, and to replace a cutting lever on a railroad car.  *See* (Tr. at 59, 61).  Beforehand, he requested additional assistance, but no help was sent.  *See* (Tr. at 60).

In order to replace the cutting lever, Rivenburgh had to use an acetylene torch.  *See id.*  He had been trained on acetylene torch use through classroom instruction and hands-on experience.  *See* (Tr. at 55). At the time of the accident, he had thirty years experience using the torch. *See id.*

He retrieved a torch from the only repair car in the yard.  *See id.* Before striking the igniter to light it, he examined it "the best he could."[3]

---

[2]Although application of the differing Rule 50 and 59 standards can result in facts and reasonable inferences that vary, there are no significant differences in this case.

[3]He explained that he felt "rushed," and felt that he "didn't have the time" to adequately inspect the torch prior to using it.  (Tr. at 62), *Dkt. No. 100*.  He further testified that he "was doing three other jobs at once and [his supervisors] were calling [him] every ten minutes on the

*See* (Tr. at 62).   He conceded at trial that he did not see slag when he initially examined the torch.  *See*  (Tr. at 64).

When he turned on the oxygen tank and struck the igniter, the torch made a loud noise.  *See id.*  He characterized the noise as an "explosion," explaining that "the next thing [he] knew, [he] was on [his] knees and...was holding [his] ears because [he] couldn't hear nothing [sic]."  *Id.*  He described the noise as "the worst noise [he] ever heard."  *Id.*  After the explosion, he retrieved the torch and inspected it, and noticed that slag was embedded on the tip.  *See* (Tr. at 66).  He turned the torch off and placed it back in the repair truck.  *See id.*  According to CSX's safety documents, it was aware of hazards associated with acetylene torch use, including "[b]lowback of hot slag because of ... explosive gases accumulating ...." *See Exhib. List D-7, Dkt. No. 92*.

Rivenburgh returned to the office where he filled out a safety report. *See* (Tr. at 68).  He recalled having a headache, feeling dizzy and disoriented, and feeling pain in his ears, neck, and head immediately after the incident.  *See* (Tr. at 68, 69).  According to his medical expert, he suffered a permanent, irreversible hearing loss in his right ear at the

---

radio asking [him] have you done that job, are you completed yet [sic]...." *Id.*

conversational level.  *See* (Tr. at 62).

## IV.  DISCUSSION

### A.  Standard of Review

#### 1.  Rule 50

"Judgment as a matter of law is proper when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 428 (2d Cir. 2005) (citing FED. R. CIV. P. 50(a)(1)).  The court must "consider the evidence in the light most favorable to the party against whom the motion was made and...give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence."  *Id.* at 429 (internal quotation marks and citation omitted); *see also Reeves v. Sanderson Plumbing Prods.*, *Inc.*, 530 U.S. 133, 150 (2000).  "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."  *Space Hunters*, 429 F.3d at 429 (internal quotation marks and citation omitted).  "A jury verdict should be set aside only where there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture,

or...such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.'" *Id.* (citing *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992)).

### 2. Rule 59

Rule 59(a)(1) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" FED. R. CIV. P. 59. This standard permits new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or...the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998) (quotation marks and citation omitted). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *Id.* Unlike the standard of review applicable to a Rule 50 motion, "...a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner....A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious." *Id.* at 134 (internal quotation marks and

6

citation omitted).  A trial judge's disagreement with the jury's verdict alone is insufficient reason to grant a motion for a new trial.  *See Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 679 (2d Cir.1983).

## B. Motions

In support of its Rule 50 motion, CSX argues that it is entitled to judgment as a matter of law because the jury's findings were the result of surmise and conjecture.  As to its Rule 59 motion, it argues that the jury's verdict was egregious.  Whether the court applies the Rule 50 or 59 standard of review, it reaches the same conclusion; namely, the jury's verdict is supported by competent evidence, and CSX's motions are without merit.

CSX specifically contends that Rivenburgh failed to prove: (1) that CSX's negligence caused his injury; (2) that CSX knew or should have known of a dangerous condition or that Rivenburgh's injury was foreseeable by CSX; and (3) that CSX had a reasonable opportunity to repair the dangerous condition.  CSX also argues that the weight of the evidence was adversely impacted by erroneous evidentiary rulings that allowed expert testimony by lay witnesses concerning the cause of the loud noise.  Moreover, CSX argues that the jury's finding that Rivenburgh was

7

forty percent comparatively negligent and that CSX was sixty percent
comparatively negligent was against the weight of the credible evidence.
Finally, CSX argues that the award in the amount of $600,000.00 for past
pain and suffering and $400,000.00 for future pain and suffering was
excessive, and a new trial should be ordered on the issue of damages.

### 1.  The Jury's Finding of Negligence

Regarding its negligence contentions, CSX argues that it is pure
speculation that: (1) there was slag embedded on the tip of the torch prior
to the loud noise; (2) that CSX should have known about the existence of
any slag on the torch prior to the time Rivenburgh used it; and (3) that CSX
had a reasonable opportunity to repair or fix the torch prior to Rivenburgh's
use.  Rivenburgh counters that given the relaxed FELA negligence
standards, the evidence sufficiently supported the jury's conclusion that
CSX was partly liable for his injury.

Under FELA, a railroad engaged in interstate commerce is liable to
"any person suffering injury while he is employed by [the railroad]... for
such injury or death resulting in whole or in part from the negligence of any
of the officers, agents, or employees of [the railroad]."  45 U.S.C. § 51.  The
Act requires covered employers "to provide its employees with a

reasonably safe place to work." *Sinclair v. Long Island R.R.,* 985 F.2d 74, 76 (2d Cir.1993) (citation omitted). The Second Circuit construes the statute, "in light of its broad remedial nature, as creating a relaxed standard for negligence as well as causation." *Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir. 1999) (citation omitted). "The Act requires an employer to provide its employees with a reasonably safe place to work,...and this includes the duty to maintain and inspect work areas." *Sinclair*, 985 F.2d at 76 (citation omitted). The scope of this ongoing duty is clear. "An employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." *Gallose v. Long Island R.R.,* 878 F.2d 80, 84-85 (2d Cir.1989) (citation omitted).

In addition, "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Baltimore and Ohio R.R. Co.*, 372 U.S. 108, 117 (1963) (citation omitted). The reasonable foreseeability element in FELA actions "requires proof of actual or constructive notice to the employer of the defective condition that caused the injury." *Sinclair,* 985 F.2d at 77. "The issue of notice typically presents a question of fact." *Paul v. Genesee & Wyo. Indus., Inc.*, 93 F. Supp. 2d 310, 318 (W.D.N.Y.

9

2000).  "[A]s with all factual issues under FELA, the right of the jury to pass on this issue must be liberally construed."  *Herbert v. Nat'l R.R. Passenger Corp.*, 92-cv-6937, 1995 U.S. Dist. LEXIS 12402, at *7 (S.D.N.Y. Aug. 28, 1995) (citing *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 85 (2d Cir. 1989)).  "This is especially true in negligence actions brought under the FELA, where 'the role of the jury is significantly greater...than in common law negligence actions,' and where the jury's right to pass upon the question of the employer's liability 'must be most liberally viewed.'"  *Gallose*, 878 F.2d at 84 (citation omitted).

However, "FELA is not a strict liability statute,...and the fact that an employee is injured is not proof of negligence."  *Williams*, 196 F.3d at 406 (citation omitted).  "FELA does not make the employer the insurer of the safety of his employees while they are on duty.  The basis of his liability is his negligence, not the fact that injuries occur."  *Capriotti v. Consol. Rail Corp.*, 878 F. Supp. 429, 431 (N.D.N.Y. 1995) (citation omitted).  Thus, "the traditional common law negligence elements of duty, breach, causation and damages are still applicable."  *Id.*  Causation, for example, can be established by showing that employer negligence played any part, even the slightest, in producing the injury for which damages are sought.  *See*

10

*Williams*, 196 F.3d at 406.  Under this standard, FELA defendants may be held liable for injuries that would be considered too remote under common law.  *See id.* at 407.

The court is unpersuaded by CSX's argument that a reasonable and fair-minded jury could not have arrived at the instant verdict based on the trial evidence.  The parties do not dispute that CSX owed Rivenburgh a duty to provide a safe work environment, and that element is clearly established.  As to causation, Rivenburgh had to establish that CSX's negligence played a part, even the slightest, in producing the injury for which damages were sought.  *See Williams*, 196 F.3d at 406.  The jury was entitled to infer, based on the testimony of Rivenburgh and Zinzow, that the presence of slag on the tip of the acetylene torch caused the loud noise that resulted in Rivenburgh's hearing loss.  Rivenburgh and Zinzow both testified about the dangers of acetylene torches and the possible consequences of failing to clean and inspect them prior to their use.  Moreover, Rivenburgh testified that he saw slag on the tip of the torch after hearing the loud noise.

The jury was also entitled to find foreseeability because CSX trained its employees to inspect and clean acetylene torches prior to using them.

11

At trial, CSX introduced a document entitled, "Proper Use of Cutting Torches." *See Exhib. List D-7, Dkt. No. 92.* That document recites safety procedures taught to CSX employees, such as "inspecting torch...for any defects and correct." *Id.* It also lists four "specific hazards" resulting from the failure to follow safety procedures, including, "[b]lowback of hot slag because of haste or lack of awareness[,]...[and] explosive gases accumulating...-torch not properly turned off." *Id.* Clearly, these safety measures reflected CSX's knowledge that acetylene torches could be dangerous if not cared for properly. Based on the testimony of Rivenburgh and Zinzow, coupled with the trial exhibit, a reasonable jury could infer that a CSX employee's failure to properly inspect and clean the torch caused the explosion. Furthermore, the jury could have reasonably concluded that CSX, in part, was responsible for Rivenburgh's failure to detect the slag because its supervisors were pressuring him to expedite his work.

As stated, the relaxed negligence standard under FELA is whether the employer's negligence played any part, even the slightest, in the plaintiff's injury. *See Williams*, 196 F.3d at 406. Thus, the evidence was sufficient to support the jury's conclusion that CSX was liable for Rivenburgh's injury.

## 2.  Erroneous Evidentiary Ruling: Expert Testimony

Before trial, CSX filed a motion *in limine*, seeking to preclude testimony from Rivenburgh and a co-employee, Zinzow, concerning the cause of the explosion.  *See Dkt. No. 63*.  The court reserved decision, but ordered Rivenburgh to limit his and Zinzow's testimony to facts and observations they experienced while using acetylene torches.  The court also advised CSX's counsel that it would revisit the issue in the event that Rivenburgh sought to convert lay witness observations into expert opinion.

CSX now argues that Rivenburgh and Zinzow impermissibly gave expert testimony regarding the cause of the loud noise emitted from the acetylene torch.[4]  Therefore, CSX concludes, the jury's verdict cannot survive scrutiny if that testimony is excised from the record.  According to CSX, Rivenburgh testified in his pretrial deposition that he had never known of an acetylene torch causing a loud noise.  CSX next contends that Rivenburgh purposefully deviated from that statement at trial when he testified that he believed the loud noise was caused by slag buildup on the

---

[4]Rivenburgh contends that CSX failed to renew its pre-trial objection, and waived it.  As to waiver, Rivenburgh also points out that CSX objected only once during Zinzow's testimony on the basis of improper expert testimony, and the court overruled that objection.  Because Rivenburgh and Zinzow provided proper lay witness testimony under the Federal Rules of Evidence, analysis of the waiver argument is unnecessary.

tip of the torch.  CSX maintains that this inconsistency allowed Rivenburgh

to circumvent Federal Rule of Evidence 701, which prohibits lay witnesses

from testifying to scientific, technical, or other specialized knowledge.  *See*

FED. R. EVID. 701 (2001).

Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness'
> testimony in the form of opinions or inferences is limited
> to those opinions or inferences which are (a) rationally
> based on the perception of the witness, and (b) helpful to
> a clear understanding of the witness' testimony or the
> determination of a fact in issue, and (c) not based on
> scientific, technical, or other specialized knowledge within
> the scope of Rule 702.

FED. R. EVID. 701.  Rivenburgh testified at trial that inspection of the torch

was necessary so that "you wouldn't have a problem of slag building up

onto it, and you wouldn't have a problem with the torch exploding, so it's a

safe tool to use."  *See* (Tr. at 51-52), *Dkt. No. 100*.  These observations

were preceded by testimony that he had thirty years experience working

with an acetylene torch.  *See* (Tr. at 13-18, 51, 55, 78).  Zinzow testified

about the hazards of slag on the tip of the torch after it was established that

he had used the torch thousands of times.  *See* (Tr. at 183), *Dkt. No. 101*.

Rivenburgh and Zinzow testified not as experts, but as lay witnesses.

14

Their testimony was based on their own experiences and perceptions, and it was helpful to the jury in determining what happened on October 12, 2000.  Moreover, neither Rivenburgh nor Zinzow used hyper-technical language or scientific terminology during their testimony.  Instead, they used lay persons' terms, and their observations were based on their own years of experience working with an acetylene torch like the one that caused Rivenburgh's injury.  Furthermore, the observations were consistent with the training they received and consistent with CSX's own safety literature.

CSX characterizes Rivenburgh's deposition and trial testimony as inconsistent, but the court disagrees.  Rivenburgh testified during his deposition that he did not know that a loud noise was a risk associated with the use of a torch.  That observation is not inconsistent with his trial testimony that he was taught to clean and inspect the torch prior to using it so that slag would not build up at the tip of the torch.  Moreover, Rivenburgh had thirty years experience using an acetylene torch, and while he may not have been aware of a loud noise risk, he could still testify to the facts he learned during his thirty years experience.  Accordingly, this argument lacks merit, and the testimony of Rivenburgh and Zinzow was

properly admitted.  So too, that testimony was appropriately considered by the jury in reaching its verdict.

### 3. Comparative Negligence

In conclusory fashion, CSX argues that the jury's assessment of liability is against the weight of the credible evidence.  The court is not persuaded that the jury's verdict is either egregious or constitutes a miscarriage of justice.  There is no doubt that there was slag on the tip of the torch after the loud noise, and that the slag was present due to someone's negligence.  Rivenburgh admitted that he was partly negligent because he did not sufficiently inspect the torch prior to using it.  He also offered circumstantial evidence of CSX's negligence; namely, some CSX employee failed to clean the torch.  Precisely who was negligent and to what degree were factual issues squarely presented to the jury, and resolved by them.  Despite CSX's general argument that there was no evidence of negligence or foreseeability, there was ample evidence presented at trial that slag on the tip of the torch caused a loud noise and that the presence of slag buildup was partly due to the negligence of a CSX employee.  Accordingly, CSX's argument is unpersuasive.

### 4. Excessiveness of the Verdict

### a. Damages

CSX contends that the jury's damage award for past and future pain and suffering is excessive as a matter of law and warrants a new trial on this issue.  It argues that Rivenburgh adduced no evidence demonstrating that he suffered pain.[5]  Rivenburgh maintains that given the evidence, the damages award ought not shock the judicial conscience and should be upheld.

"If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount."  *Ahlf v. CSX Transp.*, 386 F. Supp. 2d 83, 87 (N.D.N.Y. 2005) (citation omitted).  "A jury verdict is not, certainly, something lightly to be set aside."  *Id.* (citing *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 566 (2d Cir. 1988)).  Whether a verdict is excessive is a question of law.  *See id.*  A verdict is considered excessive when it

---

[5]In the sentence following CSX's assertion to that effect, it states, "plaintiff claimed only on the day of the accident to have experienced a headache, dizziness, and disorientation." *Dkt. No. 108.*  Moreover, CSX continues, "plaintiff's wife testified that for approximately one week, plaintiff withdrew from the family, spent a lot of time in bed...and was lost." *Id.*  CSX further claims that Rivenburgh did not testify to any pain, suffering, or loss of enjoyment of life.  CSX's position lacks merit.  Clearly, Rivenburgh testified that he experienced pain on the day of the explosion.  Moreover, he testified that the quality of his life had changed due to the hearing loss he suffered as a result of the explosion.  *See* (Tr. at 69, 70, 73, 74, 86, 87)*, Dkt. No. 100.*

"'shocks the judicial conscience,' and...exceeds what a reasonable jury

could have returned for the plaintiff if it followed the court's instructions."

*Id.* (citing *Mazyck v. Long Island R.R. Co.*, 896 F. Supp. 1330, 1336

(E.D.N.Y. 1995)).  However, "the jury's award should not be disturbed

unless 'the quantum of damages found by a jury is clearly outside the

maximum limit of a reasonable range.'"  *Id.* (citation omitted).  A court's

consideration of the excessiveness of a jury award turns on the particular

facts of each case.  *See Ahlf*, 386 F. Supp. 2d at 88.  Moreover, a court

reviewing a jury award must view "the evidence pertaining to pain and

suffering in the light most favorable to the plaintiff[.]..."  *Id.* (internal

quotation marks and citation omitted).

Maintaining that the verdict was excessive because Rivenburgh

suffered hearing loss at only one frequency, CSX cites a New York

appellate case that considered such damages for a partial hearing loss.

*See Preston v. Young*, 239 A.D.2d 729 (1997).[6]  As Rivenburgh points out,

*Preston* is factually distinguishable.  First, the plaintiff in *Preston* sought

---

[6]CSX points out that there are eight different frequencies of hearing in each ear.  The frequency levels are: 250, 500, 1000, 2000, 3000, 4000, 6000, and 8000.  CSX maintains that if only the 2000 frequency level in the right ear was damaged as a result of the explosion, then only one-sixteenth of Rivenburgh's total hearing was injured.  *See Dkt. No. 102*.

In *Preston*, the court upheld the jury's award of $2,000.00 for past pain and suffering and $23,000.00 for future pain and suffering.  *See Preston*, 239 A.D.2d at 730.

recovery for an alleged injury to his right ear that he suffered in a 1993 accident. *See id.* at 729. Secondly, the plaintiff's hearing loss in *Preston* was at a level for high pitches and did not hinder his ability to hear normal conversations. *See id.* at 731. Thus, *Preston* is not directly on point.

When assessing the excessiveness of a jury award, "courts have found it useful to review awards in other cases involving similar injuries, while bearing in mind that any given judgment depends on a unique set of facts and circumstances." *Ahlf*, 386 F. Supp. 2d at 88 (internal quotation marks and citation omitted). In *CSX Transportation v. Long*, the plaintiff sued CSX for hearing loss sustained from years of exposure to train horns and machinery. *See CSX Transp. v. Long*, 703 So. 2d 892 (1996). The jury returned a $1,000,000.00 verdict, and the Supreme Court of Alabama reduced it to $500,000.00. *See id.* at 899. In *CSX Transportation v. Maynard*, the jury awarded the plaintiff $325,000.00 in compensatory damages for hearing loss he suffered due to exposure to machines emitting high noise levels. *See CSX Transp. v. Maynard*, 667 So. 2d 642, 643 (1995). In *Guerrero v. American President Lines, Ltd.*, the Northern District of New York upheld a verdict in the amount of $200,000.00 for the plaintiff's 55% loss of hearing and total loss of taste and smell. *See*

19

*Guerrero v. Am. President Lines, Ltd.*, 394 F. Supp. 333, 338 (1975).  The

Court of Appeals of Ohio recently affirmed a jury verdict of $102,000.00 in

favor of a plaintiff after he suffered from tinnitus[7] due to an explosion of a

safety device nearby.  *See Mullet v. Wheeling & Lake Erie Ry. Co.*, No.

81688, 2003 Ohio App. LEXIS 2996, at *1 (Ct. App. Ohio June 26, 2003).

Rivenburgh suffered a permanent, irreversible hearing loss in his

right ear at the conversational level.  *See* (Tr. at 62), *Dkt. No. 100.*  His

hearing was strained prior to the explosion, and the additional hearing loss

worsened his quality of life.  He testified that the accident resulted in his

having to wear a hearing aid in his right ear.  *See* (Tr. at 73).  He also

explained to the jury that when he takes the hearing aids out at night, he

has to have:

> two alarm clocks wake [him] up in the morning, one has big dials like
> this [sic] and another one to back that up. [He] can't hear the phone,
> the TV playing.  [He] ha[s] a constant ringing all the time..., constant
> humming.  Everybody - for the first six months after the
> accident...sounded like they were talking like Mickey Mouse, that's
> how bad it was.

(Tr. at 73).  Moreover, the ringing and humming in his ear worsened after

the accident.  *See* (Tr. at 74).  He explained that his normal voice is now at

---

[7]Tinnitus is "a noise in the ears, such as ringing, buzzing, roaring or clicking."
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 807 (28th ed. 1994).

a shouting level, and that he has to "stare at people to hear what they are saying." *Id.* Dr. Tan also testified that Rivenburgh's hearing loss was permanent, irreversible, and medically diagnosed. *See Dr. Tan's videotape testimony; Exhib. List P-8, Dkt. No. 92.* As the finder of fact, the jury was entitled to credit Dr. Tan's opinion.

On the basis of the testimony of Rivenburgh and Dr. Tan together with other medical evidence admitted at trial, the jury's award was justified. Although the award may be high in light of the cited cases given the type of injury suffered by Rivenburgh, the award does not "shock the judicial conscience." Moreover, the award is not so grossly excessive as to constitute a miscarriage of justice.

### b. Discounted Future Damages

The parties disagree in their calculations of the present value of the future damages award. The parties agreed to apply a two percent discount rate to any award for future pain and suffering. Subsequently, both parties submitted calculations performed by their own financial experts as to the present value of $400,000.00, *see Dkt. Nos. 105(4), 107*, and those

submissions are inconsistent.[8]  *See id.*  Neither party has explained the difference.  Accordingly, the court reserves on this aspect of the motions, and affords the parties an additional fourteen days to explain the difference, or reach an agreement.  Absent an agreement, the court will either resolve the issue on the basis of the additional submissions, or schedule a hearing.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that CSX's motions for judgment notwithstanding the verdict or, alternatively, for a new trial are **DENIED**, and it is further

**ORDERED** that the court reserves on the entry of judgment of the jury's $400,000.00 award for future pain and suffering, and it is further

**ORDERED** that the parties submit a stipulation regarding the discounted value of the award for future pain and suffering or, alternatively, explanations for their differing calculations within **FOURTEEN (14) DAYS** from the filing date of this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

September 5, 2006

_____

[8]Rivenburgh's economic expert calculated the present value of $400,000.00 at $328,239.00 (at a 2% discount rate), and CSX's expert calculated the present value of $400,000.00 at $321,916.99 (also at a 2% discount rate).  *See Dkt. Nos. 105(4), 107.*

Albany, New York

Gary L. Sharpe
U.S. District Judge